# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MEMORIAL HERMANN HOSPITAL SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL CASE NO. H-06-3570 |
| BOYD GAMING CORPORATION PERCS PLAN, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This Employee Retirement Income Security Act ("ERISA") case is before the Court on the Motion to Dismiss, or Alternatively, to Transfer for Improper Venue ("Motion") [Doc. # 15] filed by Defendant Boyd Gaming Corporation PERCS Plan (the "Plan"). In the Motion, the Plan contends that venue in the Southern District is improper and seeks either dismissal of this case or transfer of the matter to the United States District Court for the District of Nevada.[1] The Court has considered the parties' submissions, all matters of record, and applicable legal authorities. The Court concludes that venue is not proper in the Southern District of Texas. There is no appellate authority on the issue of whether venue is proper in the district where the plan

---

[1] Plaintiff Memorial Hermann Hospital System ("Hermann") filed a Response [Doc. # 19], the Plan filed a Reply [Doc # 20], and Hermann filed a Supplemental Response [Doc. # 23].

participant resides, as opposed to the district in which the plan made the decision to deny the claim, and the question has generated a deep split of opinion in district courts around the country. Because venue is improper in this district, a decision by this Court would be an advisory opinion under the facts presented. The Court accordingly declines to rule definitively on the issue. Further, because Hermann has opposed transfer to the District of Nevada, where venue is clearly proper, but has not expressed a view concerning transfer to the district where the plan participant resides, the Court dismisses this case without prejudice rather than transferring it to either venue.

### I.   BACKGROUND

In December 2004, Harry Putnam, an employee of Boyd Racing, L.L.C. ("Boyd Racing") at the Delta Down's Casino in Louisiana, was seriously injured in an automobile accident in Montgomery County, Texas. *See* Accident Report, Exh. A to Response.[2] At the time of the accident, Putnam was a resident of Vidor, Texas, located in the Eastern District of Texas. *See id.* In 2005, while the Plan was reviewing his claim for benefits, Putnam was a resident of Spurger, Texas, also located in the Eastern District of Texas. *See* Letter dated June 28, 2005, Exh. B to Motion.

Boyd Racing is affiliated with Boyd Gaming Corporation ("Boyd"), which operates the Plan, a self-funded employee benefits/welfare plan for Boyd Racing

---

[2]   Montgomery County is located in the Southern District of Texas, Houston Division.

employees. The Plan is administered in Las Vegas, Nevada. The Plan has no employees or other operations in Texas or Louisiana.

After the automobile accident, Putnam was flown from the accident scene to Hermann, a Houston-area hospital, by a medical helicopter service known as "Life Flight," a service Hermann operates as part of its health care system. While at Hermann, Putnam incurred medical expenses exceeding $107,000.

Putnam allegedly assigned to Hermann all his rights under the Plan, specifically his right to payment for health care services provided in connection with his treatment at Hermann, so Hermann billed the Plan directly for payment of the medical services provided to Putnam. The Plan denied the claim in all respects, except for approximately $8,800 of the Life Flight fees.

Hermann, as an assignee of Putnam, filed suit in state court alleging a state law breach of contract claim and a federal statutory claim under ERISA. Hermann seeks the "benefits due to them [*sic*] pursuant to the terms of the [Plan] for the care and treatment it provided to Harry Putnam," citing 29 U.S.C. § 1132(a)(1)(B).[3] The Plan removed the suit to federal court, asserting federal question jurisdiction. The Plan then filed its Motion seeking primarily dismissal of this case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. Alternatively, the Plan asks

---

[3]     Plaintiff's Original Petition, attached to Defendant's Notice of Removal [Doc. # 1], ¶ 22.

the Court to transfer this case to the District of Nevada pursuant to 28 U.S.C. § 1406(a).

## II.     ANALYSIS

Venue for an ERISA action is proper either "in the district [i] where the plan is administered, [ii] where the breach took place, or [iii] where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The parties do not dispute that venue under the first and third prongs of § 1132(e)(2) is proper in the District of Nevada and is not proper in the Southern District of Texas.

The sole question presented by the parties is whether "the breach took place" in Houston such that venue is proper in the Southern District of Texas under the second prong of § 1132(e)(2). Hermann argues that venue here is proper because the Plan refused to remit payment to Hermann, a Houston resident, on a claim it submitted as Putnam's assignee of benefits.

There are no appellate cases deciding where the "breach took place" for § 1132(e)(2) purposes. However, the location of where the "breach took place" is similar to the analysis of where "the claim arose" for general venue purposes. "The determination of where 'the claim arose' for purposes of federal venue under [28 U.S.C.] § 1391 is a federal question whose answer depends on federal law." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183, n.15 (1979); *see Bostic*, 517 F. Supp.

at 636; *see generally Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 244 (1st Cir. 2006) (holding that a federal court's "oversight of ERISA cases must be governed by principles of federal common law"). Thus, in this ERISA venue dispute, the Court will look to federal law for a determination of where the claim arose and the place of performance to conclude "where the breach took place."

Generally, district courts have determined where the "breach took place" for purposes of ERISA venue by analogy to a breach of contract claim, because ERISA benefit plans are essentially contracts among the plan, the employer and the plan participants. *See, e.g., Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citations omitted); *Cole v. Central States Southeast and Southwest Areas Health and Welfare Fund*, 227 F. Supp. 2d 190, 195 (D. Mass. 2001) ("*Cole I*"); *Cole v. Central States Southeast and Southwest Areas Health and Welfare Fund*, 225 F. Supp. 2d 96, 98 (D. Mass. 2002) ("*Cole II*"); *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892 (E.D. Pa. 1997); *Brown Schools, Inc. v. Florida Power Corp.*, 806 F. Supp. 146, 151 (W.D. Tex. 1992); *Wallace v. Am. Petrofina, Inc.*, 659 F. Supp. 829, 832 (E.D. Tex. 1987); *Bostic v. Ohio River Co. (Ohio Division) Basic Pension Plan*, 517 F. Supp. 627, 635 (S.D. W. Va. 1981). *See generally Chacko v. Sabre, Inc.*, 473 F.3d 604, 612 (5th Cir. 2006) ("When interpreting plan provisions, we interpret the contract language in an ordinary and popular sense as would a person of

average intelligence and experience, such that the language is given its generally accepted meaning if there is one."); *Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504, 507 (5th Cir. 2005) (internal quotation marks and citations omitted)). *Cf. Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S. Ct. 1869, 1984 (2006) (ERISA provides remedies to enforce plan terms, one of which remedies is actions for breach of contract).

District courts' decisions on the issue of where the "breach took place" for purposes of ERISA venue, however, differ. Some courts hold that the place where the "breach took place" is where performance was to be rendered to the participant under the Plan. *See, e.g., Bostic*, 517 F. Supp. at 636; *Coulter v. Office and Professional Employees Int'l Union*, 2003 WL 21938910, *5 (E.D. Tenn. June 3, 2003).[4] These courts interpret "performance" to mean where the payee was to receive payment of benefits under the plan. A focus for these courts was the perceived hardship on plan participants to have to litigate in locations distant from the participants' residences.[5]

This Court does not find the reasoning in these cases persuasive. These courts,

---

[4] Some of these cases cite to Congress's expression of an intent in enacting ERISA to provide broad enforcement remedies, *see* H.R. REP. NO. 93-533, 93d Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S. CODE CONG. & ADMIN. NEWS p. 4639, 4655.

[5] The Court questions the weight of this concern because as a practical matter plan participants assign their claims for benefits to the health care providers that render treatment to the participant.

in concluding that the breach occurs in the district where the benefits were to be received, rely heavily on the analysis of *Bostic v. Ohio River Co. (Ohio Division) Basic Pension Plan*, 517 F. Supp. 627, 635 (S.D. W. Va. 1981). The *Bostic* court, after concluding that "where the breach took place" was where the "contract is to be performed," *id.* at 636 (citations omitted),[6] acknowledged that there is "some confusion over what, precisely, is meant . . . by the phrase 'the place of performance.'" *Id.* The court then concluded summarily that "read in context it is clear that [the place of performance] is the place where the recipient of benefit under the contract actually acquires his due," specifically, "the place where pension benefits are received, which is plaintiff's residence." *Id.* at 636, 637. The *Bostic* court, without analysis or citation to authority, rejected the argument that the "place of performance" was where the plan made the decision to deny the claim, *id.* at 636-37, simply finding comfort in the result in *Varsic v. United States District Court*, 607 F.2d 245, 248 (9th Cir. 1979) (holding that venue was appropriate in the plan participant's district because the defendant plan was "found" in that district, by interpreting the term "found" as it is used in 28 U.S.C.

---

[6] Much of the *Bostic* court's analysis was solid. The court distinguished between claims for breach of plan provisions and breach of fiduciary duty and ERISA obligations, reasoned that the ERISA venue decision needed to be analyzed as if there were a breach of contract claim presented, and then held that federal common law should apply "where federal statutory law is deficient." The court further reasoned that venue analysis under 28 U.S.C. § 1361 ("district in which the claim arose") was relevant, and that federal common law may be guided by the "majority view" of state law on an issue "as opposed to the law of the forum state. *Bostic*, 517 F. Supp. at 636.

§ 1400(a) (the copyright venue statute) to be coterminous with "systematic and continuous activity" that makes a corporation "present" under *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). The result in *Bostic* also is weakened by the fact that the defendant stated that it believed that venue likely was location of the plan participant's residence.

Other district courts have held that a claim for nonpayment of benefits allegedly due under an ERISA plan arises where the plan makes the challenged decision, *i.e.*, the decision to deny payment of a claim. *See, e.g., Seitz v. Bd. of Trustees*, 953 F. Supp. 100, 102 (S.D.N.Y. 1997) ("the alleged breach 'took place' in Utica because that is where all pension benefit claims are processed"); *Boyer v. J. A. Majors Co.*, 481 F. Supp. 454, 459 (N.D. Ga. 1979) ("the breach, if any, occurred when the Committee instructed the trustee bank to [stop payment]"); *Turner v. CF&I Steel Corp.*, 510 F. Supp. 537, 541 (E.D. Pa. 1981); *Orgeron v. Moran Towing Corp.*, 1994 WL 462995 (E.D. La. Aug. 22, 1994). The unstated logic behind this result appears to be that the breach of the plan, *i.e.*, the "wrong," is the decision to refuse payment, which is distinct from the "injury" or "damages" arising from the breach. The breach can be said to occur where the defendant plan makes the challenged decision, while the injury or damage occurs in the plan participant's home district.

While the Court finds the latter line of cases more persuasive, the Court nevertheless does not definitively decide whether venue would be proper in this case at the plan participant's residence because that ruling would be merely advisory.[7] The outcome of the pending motion to dismiss in fact turns on a second question presented, namely, whether the assignment by Putnam, a Plan participant and resident of the Eastern District of Texas, to Hermann, a resident of the Southern District, of the right to make a claim against the Plan for health care benefits is effective to alter the place of performance of the Plan contract. This issue is informed by the analysis in *Brown Schools, Inc. v. Florida Power Corp.*, 806 F. Supp. 146 (W.D. Tex. 1992).[8]

For the purposes of the analysis of the effect of Putnam's assignment, the Court assumes that venue is proper where the plan participant was to receive payment for health care expenses. The Court rejects Hermann's argument that venue is proper in

---

[7] Furthermore, the parties have not supplied the Court with a copy of the Plan, which is necessary to a definitive ruling on the venue issues to the extent they turn on where payment was to be made. *See, e.g., Bostic*, 517 F. Supp. at 635 n.10.

[8] Interestingly, District Judge Sam Sparks noted in *Brown Schools* that "[g]enerally, the place of breach of an ERISA plan under 29 U.S.C. § 1132 is where the recipient of benefits actually acquires his due, *i.e.*, receives payment of benefits . . . or where the decision to deny benefits is made." *Id.* at 150 (citations and internal quotation marks omitted). In *Brown Schools*, the court did not need to decide whether venue was proper at the place the plan participant would receive the benefits – distinct from the location of the place of the plan's challenged decision – because the locations were the same. The plan participant, the participant's employment, and the plan all were located in Florida. Therefore, the court's passing comment at the end of the opinion, appearing to prefer the location of the plan participant, is not legally meaningful.

the Southern District of Texas simply because an assignee of the participant is located here. "Because the assignee stands in the shoes of the assignor, the assignee accepts the assignor's location for venue purposes." *Coulter*, 2003 WL 21938910 at *4; *see also Brown Schools*, 806 F. Supp. at 151 (stating that the assignee "may pursue only whatever rights [the assignor] enjoyed under the terms of the plan" and holding that when the plaintiff accepted the assignment "it assumed [the assignor's] location for purposes of ERISA venue").[9] The Court has been presented with no appellate or binding authority to support Hermann's position. The Court has been cited to no federal law or authorities establishing a "majority view" under state law that an assignee, merely by taking an assignment of contract rights to payment, has the power to alter the location where suit may be brought under the contract in the absence of an express contractual provision permitting such effect of an assignment. Therefore, as a general matter, the Court holds that an ERISA plan participant's assignment to a health care provider of the right to claim compensation for approved health care services does not alter, in the absence of an express ERISA plan term mandating a change, the location of proper venue under ERISA § 1132(e)(2) from the place(s) venue would have existed had no assignment occurred. This result does not

---

[9]  A contrary result was reached by a magistrate judge in *Cole I*, 227 F. Supp. 2d at 195, adopted by the district court in *Cole II*, 225 F. Supp. at 98. The Court respectfully declines to follow *Cole*'s reasoning.

meaningfully limit a plan participant's remedies, because this result applies only when the participant has assigned the claim. This result is also warranted to protect ERISA plans from being subjected to multiple lawsuits with the potential of differing results when a plan participant is involved in a single event and requires medical treatment by different providers in different locations, each having an assignment from the participant. *See generally Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

The Court therefore holds that venue under ERISA is not proper in this District.

### III.   **DISMISSAL OR TRANSFER?**

The Court has concluded that venue is not proper in the Southern District of Texas. The Court accordingly declines to reach the issue of whether venue is proper in the Eastern District of Texas where Putnam, the Plan participant, resides and has resided at all times pertinent to this suit. Because Plaintiff has not expressed a view on litigating this case in the Eastern District of Texas, and because Plaintiff has opposed transfer to the District of Nevada where venue clearly is proper, the Court dismisses the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

This result differs from the Court's position expressed at the initial pretrial conference that the case would be transferred, rather than dismissed, if venue was held to be improper in the Southern District of Texas. Nevertheless, dismissal is the appropriate result in this case because on the existing record, it is unclear where this

case should be transferred. In any event, a ruling on the issue of whether venue is proper at the place of the participant's residence is more appropriately made by the court in the Eastern District of Texas – if and when Plaintiff chooses to present the issue by refiling this case there.

## IV. CONCLUSION AND ORDER

For the reasons explained above, it is hereby

**ORDERED** that Defendant's Motion to Dismiss and alternatively to Transfer [Doc. # 15] is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE** to being refiled in a court where venue is proper.

SIGNED at Houston, Texas this 22nd day of **February, 2007**.

_____
Nancy F. Atlas
United States District Judge